David E. SANDMAN, John E. McDonald, Stuart F. Young, Trustees of Sheet Metal Workers Local 141 Apprentice Training Fund, Plaintiffs-Appellees,

v.

LOCAL UNION NO. 141, SHEET METAL WORKERS INTERNATIONAL ASSOCIATION; Paul Roessler, Kevin Cahill, Lee Costello, Trustees of Sheet Metal Workers Local 141 Apprentice Training Trust Fund, Defendants-Appellants.

No. 82-3098.

United States Court of Appeals, Sixth Circuit.

Argued March 11, 1983.

Decided April 29, 1983.

Harold G. Korbee, Wood, Lamping, Slutz & Reckman, Cincinnati, Ohio, for defendants-appellants.

Arnold Morelli, Cincinnati, Ohio, for plaintiffs-appellees.

Before EDWARDS, Chief Judge, ENGEL, Circuit Judge; and WEICK, Senior Circuit Judge.

PER CURIAM.

This appeal is from an order of the district court granting summary judgment in favor of plaintiffs-appellees, appointing an impartial umpire thereby resolving a deadlock existing between Management and Union trustees over the appointment of apprentices, said six trustees comprising the Board of Trustees of Sheet Metal Workers Local 141 Apprentice Training Trust Fund (Fund).

This Fund was provided for in the collective bargaining agreement between the Sheet Metal Contractors Association (Employers or Management) and Local Union 141, Sheet Metal Workers International Association (Union). Pursuant to the collective bargaining agreement, a trust agreement was executed in 1967. Under the terms of the trust agreement, the Employers were to make specified payments to the Fund, which money was to be used to educate and train apprentices in accordance with the trust agreement. The basic thrust of the trust agreement was to increase minority group representation among apprentices so that eventually the minority population would comprise its proportionate share of journeymen laborers.

The trust agreement provided that in the event a deadlock developed among the trustees "on any of the affairs of this trust", an impartial umpire would be appointed to resolve the dispute. If the trustees could not agree on such an umpire, then any of the trustees could petition the federal district court to appoint such an umpire to decide the dispute. Furthermore, the agreement provided that its provisions "shall be liberally construed in order to promote and effectuate the establishment and operation of the Apprentice Training Program."

In 1974, the Joint Apprentice Committee executed a set of Sheet Metal Apprenticeship Standards in order to supplement and clarify the provisions of the agreement with respect to the Fund. These standards provided, inter alia:

The employer agrees that the apprentice-journeymen ratio under these standards shall be no more than one (1) apprentice for each four (4) employed journeymen members of Local # 141.

This was similar to language in the collective bargaining agreement which stated:

It is hereby agreed that the employer shall apply to the Joint Apprentice Committee and the Joint Apprentice Committee shall grant apprentices on the basis of one (1) apprentice for each four (4) journeymen regularly employed throughout the year.

It appears that over a number of years, at least since 1974, the Employers have attempted to secure an additional number

of apprentices allowed under the formula. However, the Union has delayed or refused to cooperate, thus very few apprentices have been brought in under the program. Despite the Union's obstructionist activities, however, none of the trustees ever until now sought to have the deadlocks broken by an impartial umpire which option was provided for both by the trust agreement and by the Taft-Hartley Act, 29 U.S.C. § 186(c).

The present dispute arose when the three Employer trustees presented the following resolution:

> All applying employers shall be granted one apprentice for each block of 6,400 hours of work accumulated by any and all journeymen who worked for the applying employer in the twelve month period preceding the application of the employer. Included in that 6,400 hours shall be the work time of journeymen who are members of Local 141 or sister locals in the Sheet Metal Workers International such as travelers.

The three Employer trustees voted for the resolution, the three Union trustees voted against it. The Employer trustees alleged that since the issue was deadlocked, an impartial umpire should be selected to resolve the dispute. The Union trustees refused to participate in the selection of such a referee, so the Employer trustees filed with the federal district court for such relief. The court granted plaintiffs' motion for summary judgment and denied defendants' same motion. The defendants (Union trustees) appeal.

The Union trustees argue that whatever prior disputes they may have had with plaintiffs or whatever deadlocks that may have existed previously are not relevant to the current dispute. Since plaintiffs did not attempt to have an impartial umpire appointed to settle earlier disputes, those disputes cannot properly be considered by the district court now. But since the district court did consider the prior actions of the parties, that was error, the Union contends.

The Union argues that the Employer trustees' resolution was an attempt to change the ratio of apprentices to journeymen established by the specific terms of the collective bargaining agreement. Under the collective bargaining agreement the ratio was to be four journeymen to one apprentice. But the Union cites an example, where, under the Employer trustees' resolution, a one to one ratio could theoretically exist. This would be contrary to the collective bargaining agreement, the Union contends, and the trust is not permitted to so alter the basic agreement.

Consequently, it argues, the dispute over the resolution is not a dispute concerning "affairs of the trust", but rather it concerns affairs of the collective bargaining agreement itself. It claims the court erred when it characterized the resolution as "a motion to adopt a definition clarifying when an apprentice should be indentured". It contends that the resolution deals not with *when* a new group of apprentices should be taken into the program, but rather with how many apprentices an applying Employer may have allotted him. And it maintains, this is specifically covered in the collective bargaining agreement, and it is therefore not an issue for the trustees to decide.

Its final argument is that since the proposed resolution is not a proper issue for the trustees to decide, it likewise is an issue over which an impartial referee would have no authority.

Thus it contends the district court erred in granting summary judgment to plaintiffs.

Plaintiffs assert the district court properly considered defendants' prior history of trying to frustrate the purpose of the trust by using a variety of delaying tactics. Plaintiffs argue that it was proper because it was part of the court's evaluation of whether a deadlock existed (defendants contended there was no deadlock) .... a necessary finding before the court could appoint an impartial arbitrator.

Next, plaintiffs maintain that the proposed resolution was not an effort to change the four journeymen to one appren-

tice ratio established in the collective bargaining agreement, but rather was an attempt to "clarify and implement that ratio, and to reconcile it with the ratio contained in the Standards". Plaintiffs contend that the trustees had argued over what language such as "regularly employed throughout the year" or "on the employer's payroll" meant. Thus, the proposed resolution was an effort to clarify this ambiguous language by specifying that the Employer was entitled to one apprentice for each 6,400 hours of work by the Employer's journeymen in the preceding 12 months. Plaintiffs say this does not and was not intended to change the specific provisions of the collective bargaining contract. Plaintiffs further argue that defendants' hypothetical example of where there would be one apprentice for one journeyman, is specious. This, plaintiffs say, is expressly prohibited by the Standards, and the Standards provide that "Nothing in these Standards shall be interpreted as being contrary to the present or subsequent bargaining agreement."

Finally, plaintiffs argue that the proposed resolution is an affair of the trust, and is therefore within the authority of the trustees, and that as a consequence, the district court did not err in appointing an umpire to settle the existing deadlock. This argument revolves around whether the resolution was an attempt to modify the collective bargaining agreement. Plaintiffs reassert their previous argument that it was an attempt to clarify, not modify the collective contract.

Plaintiffs contend that the district court acted properly and in accord with the trust agreement and the Taft-Hartley Act when it granted their motion for summary judgment ordering an umpire be appointed.

When the Union and Employer trustees had previously deadlocked over the number of apprentices the Employers were entitled to, the deadlock could have been settled by appointment of an impartial umpire. However, neither the Union nor the Employer trustees sought to break the earlier deadlocks with an umpire.

On the other hand, there does exist a current dispute or deadlock—that being over a current resolution put forward by the Employer trustees. We are of the opinion that the district court properly entertained this question. The key issue appears to be the scope of the trustees' authority.

Having reviewed the pleadings, affidavits and other submissions to the court, including language of the trust agreement that its provisions were to be liberally construed to effectuate the objectives of the Apprentice Training Program, the district court concluded that the resolution did not seek to modify the collective bargaining agreement, but rather only to "clarify the basis on which the 4–1 ratio shall be applied and to make the terms of the JAC Standards of the Trust Agreement.... consistent with the language of the Collective Bargaining Agreement...."

We are of the opinion that District Judge Speigel gave careful consideration to the contentions of the parties and reached a correct decision and we affirm for the additional reasons set forth in his opinion.